Tommy C. GROGG, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–1080A294.

Court of Appeals of Indiana,
First District.

March 24, 1981.

---

Larry D. Combs, Franklin, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

This is an appeal from the Johnson Circuit Court by the defendant-appellant, Tommy C. Grogg (Grogg). Grogg was convicted after a court trial on both counts of a two count information, charging in Count (1) dealing in marijuana under Ind.Code 35–48–4–10, and in Count (2) dealing in a schedule II controlled substance, namely cocaine, under Ind.Code 35–48–4–2(1) (Supp. 1978).

We affirm.

## ISSUES

Grogg presents for review two issues as follows:

I. Whether the evidence presented at trial was sufficient to overcome the defense of entrapment in that the evidence does not show a predisposition on the part of Grogg to commit the offense; and

II. Whether the evidence was sufficient to support the conviction of dealing in marijuana in an aggregate weight of more than thirty (30) grams.

## DISCUSSION AND DECISION

### Issue I.  Entrapment

■ The evidence most favorable to the State reveals the following: On November 10, 1978, shortly after noon, Rocky McClain, an undercover officer in the Drug Enforcement Section of the Indiana State Police, pursuant to information supplied by a confidential informant, entered the Bargersville Restaurant in Johnson County for the purpose of investigating drug trafficking. The confidential informant, a waitress in the establishment, pointed out Grogg to McClain, who thereupon approached Grogg, sat down at his table, and engaged him in conversation. At the very beginning of the conversation, which was conducted in the *linguae francae* of that abominable trade, McClain told Grogg that he was interested in two bags of marijuana. During the conversation, Grogg observed that if one used his head he would hold a supply of marijuana at this particular time of year because the price would go up a little in January and February. Though McClain could not remember who first suggested it, the price of $35 per bag was agreed upon. Grogg told McClain he, Grogg, would have to leave the restaurant to get the marijuana, and declined to allow McClain to accompany him. They agreed that McClain would wait in his car in the parking lot. The two men left the restaurant together, and Grogg returned twenty minutes later to the parking lot in a red farm truck. McClain got into the truck cab, Grogg delivered him two bags; McClain examined the contents of each bag and then paid Grogg $70. Later, laboratory tests proved the material in the two bags to be marijuana and to weigh 21.7 and 21.8 grams, respectively.

At the conclusion of this meeting, McClain indicated some interest in cocaine.

Grogg revealed to McClain that he would be receiving a gram of cocaine over the weekend, and told McClain that he would save him some if he so desired. The two then agreed to meet on the following Monday, November 13, 1978, at noon, at the Bargersville Restaurant, where McClain would purchase two "dimes" of cocaine for $25. McClain defined a "dime" of cocaine as a term representing a small dosage which varies in size, but, on an average, there are 18 to 20 "dimes" of cocaine in a gram. They met at the appointed time and place, and while seated at a restaurant table, Grogg delivered a yellow packet to McClain and invited him to "check it out man." McClain did, said it was alright, and paid Grogg the $25, as agreed upon.

In *Silva v. State*, (1980) Ind.App., 410 N.E.2d 1342, we reviewed the case law relative to the sufficiency of the evidence in entrapment cases. Therein we said:

"Indiana adopted the predisposition rule relative to the defense of entrapment in *Hardin v. State*, (1976) 265 Ind. 635, 358 N.E.2d 134, which was codified in Ind.Code 35–41–3–9 (Supp.1980). It is stated that when there is evidence that a police officer or agent has participated in the buying of a controlled substance, the State must then present evidence showing the accused's predisposition to commit the criminal act in order to prove that the criminal act was not solely the idea of the police. If the police merely afforded the accused an opportunity to commit the crime, he cannot rely upon the defense of entrapment. *Horn v. State*, (1978) Ind. App., 382 N.E.2d 1012. The question of predisposition is a question of subjective intent which is a matter for the trier of fact. *Stewart v. State*, (1979) Ind., 390 N.E.2d 1018. Evidence of events at the time of sale alone is sufficient to sustain the proof of predisposition. Evidence of the defendant's ability to obtain a supply of drugs within a few minutes, several different schemes to accomplish the sale, multiple sales to officers, and a large supply of contraband in his possession has been held sufficient to show predisposition. *Hutcherson v. State*, (1978) Ind.,

380 N.E.2d 1219. Evidence of the defendant's willing answer, when told by the undercover agent that he was looking for something, that the defendant had some 'jive,' and the defendant's leading the officers to a restroom where the transaction was consummated was held to be sufficient evidence of predisposition. *Cyrus v. State*, (1978) Ind., 381 N.E.2d 472.

We will neither weigh the evidence nor judge the credibility of the witness. Rather we look to the evidence most favorable to the State, together with all reasonable and logical inferences to be drawn therefrom. *Coonan v. State*, (1978) Ind., 382 N.E.2d 157. If there is evidence of probative value to support the conclusion of the trier of fact, the conviction will not be set aside. *Bryant v. State*, (1978) Ind., 376 N.E.2d 1123."

410 N.E.2d at 1345.

The evidence in the instant case is more than adequate to show predisposition on the part of Grogg to commit the offense. He made an immediate agreement to sell the contraband to a stranger upon a simple request. He had a knowledge of price, and indeed, discoursed knowledgeably of "marijuana futures," as it were. He made available to McClain the desired quantity of marijuana and cocaine, and made two sales to McClain. Finally, there was Grogg's statement to McClain concerning the existence of a forthcoming shipment of 18 to 20 doses of cocaine, which necessarily would have been ordered prior to their meeting, and represent an amount larger than a casual user would have in his possession. Such knowledge and acts on the part of Grogg are evidence of probative value from which the trier could logically and reasonably infer that Grogg was in the business of selling, and that the police merely afforded him an opportunity to commit the crime.

*Issue II. Presence of adulterants or diluents in determining aggregate amount*

◼ Grogg argues that the State, in order to enhance the penalty from a Class A

misdemeanor to a class Class D felony, had the burden of proving that he delivered more than thirty (30) grams of pure marijuana. The chemist from the State Police laboratory testified that the material in the two bags weighed 21.7 and 21.8 grams, respectively. No qualitative analysis had been performed to determine the presence of adulterants and dilutents, and the chemist had tested no more than five hundredths to one tenth of a gram of the plant material contained in each of the two bags. The chemist explained that the samples used for testing were "thief samples," that is, bits and pieces taken from the entire bulk. He likened the procedure to grain testing where grain is taken at random from different parts of the load. His opinion, based upon the "thief samples," was that the entire plant material was marijuana. However, he conceded the possibility that nonnarcotic stalks, sterilized seeds and other adulterants or dilutents could be present. Based on this evidence, Grogg contends that all of the plant material must be identified as marijuana in order to sustain the conviction of an offense involving more than thirty (30) grams.

The relevant portions of the statute, Ind. Code 35–48–4–10 (Supp.1978) are as follows:

"A person who:

(1) knowingly or intentionally ... delivers marijuana or hashish, *pure or adulterated* ; or

(2) possesses, with intent to ... deliver, marijuana or hashish, *pure or adulterated* ;

commits dealing in marijuana or hashish, a Class A misdemeanor. However, the offense is a Class D felony ... (ii) if the amount involved is more that thirty (30) grams of marijuana or two (2) grams of hashish. . . . " (Emphasis added.)

On point with the case at bar is *Stayton v. State,* (1980) Ind.App., 400 N.E.2d 784. There, chemical tests were performed on three random samples taken from fifty pounds of material seized, and the tests confirmed the presence of marijuana in each. In addition, one of the investigating

officers testified that on the basis of his experience the entire fifty pounds of material was marijuana. We held that elements of criminal cases could be proved by circumstantial evidence, and that under the evidence the trier could logically and reasonably infer that the entire bale of material was marijuana. The court reached a like result on similar facts in *Scott v. State,* (1980) Ind.App., 404 N.E.2d 1190. Upon the authority of *Stayton* and *Scott* we can affirm this case. However we wish to place our ruling on an interpretation of the statute.

Ind.Code 35–48–1–1 (Supp.1978) defines marijuana:

" 'Marijuana' means any part of the plant genus Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of the plant, including hashish, *any compound,* manufacture, salt, derivative, *mixture, or preparation of the plant,* its seeds or resin. It does not include the mature stalks of the plant; fiber produced from the stalks; oil or cake made from the seeds of the plant; any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom); fiber, oil, or cake; or the sterilized seed of the plant which is incapable of germination." (Emphasis added.)

The very statutory definition of marijuana, therefore, contemplates mixtures and compounds.

■ The question of whether the total weight of the compound including mixtures, carriers, adulterants or dilutents, should be considered in determining the statutory offense, or degree thereof, was considered in *Hutcherson v. State,* (1978) Ind.App., 381 N.E.2d 877. In that case the defendant was charged with possession of 10.98 grams of heroin under IC 1971, 35–24.1–4.6–6(b) (Burns Code Ed.) (repealed by Acts 1976, P.L. 148, § 24 and now covered under Ind. Code 35–48–4–6). That statute, as well as the present possession statute did not use the term "pure or adulterated" in defining the offense for possession of a controlled

substance, but did provide for an enhanced penalty if the amount of the controlled substance involved was an aggregate weight of ten (10) grams or more. The court, after an extensive analysis of the statutes, concluded that the statute must be construed as referring to narcotics in their pure form rather than in combinations with other substances, and a person may not be found criminally liable under the statute unless he possesses ten or more grams of the pure controlled substance. However, the court recognized the distinction in this regard between the sections imposing criminal sanctions for *possession*, and sections penalizing *unlawful dealing*. The court stated:

"There is a clear pattern of specificity throughout the sections penalizing unlawful dealing. Unlike the unlawful possession sections, each expressly defines unlawful dealing in a controlled substance as involving the substance in question in *its pure or adulterated form.* See e. g. I.C. 1971, 35–24.1–4.1–1 (Burns Code Ed.) ('a person is guilty of unlawful dealing in a controlled narcotic substance if he: (1) knowingly manufactures or delivers a controlled substance, *pure and adulterated*, classified in Schedule I or II which is a narcotic drug. . . .'). Thus it is clear that if the Legislature had intended to include the non-controlled substances used as mixers with heroin in determining aggregate weight, it would have expressly done so. Since it did not, we must conclude that such a construction of the statute was not intended. (Emphasis added.)

381 N.E.2d at 881.

We understand the above quoted language to mean that since the dealing sections of the controlled substances act proscribe dealing in the substance in its *pure or adulterated form* the aggregate weight in dealing cases includes the non–controlled substances used as mixers, dilutents, and adulterants. Transfer was denied in *Hutcherson*, but a dissent with opinion was registered by Pivarnik, J., in which Givan, C. J., concurred, in *Hutcherson v. State*, (1979) Ind., 389 N.E.2d 270. The dissent

would have held that the legislature, even absent the phrase "pure or adulterated" in referring to aggregate weight of a controlled substance, intended to refer to the controlled substance as it is sold and used on the street which includes a percentage of pure drug combined with mixers and carriers. That dissent contained an analysis of authorities from other jurisdictions:

"Similar issues have been decided by other jurisdictions and while their decisions are not totally supportive of the position I have taken here, neither are they inconsistent. For example, a New York statute provides for an enhanced penalty for defendants convicted of selling a preparation, compound, mixture or substance of an aggregate weight of one or more ounces containing a narcotic drug. Penal Law § 220.43 (McKinney Supp.1979). The words 'aggregate weight' were construed as meaning that 'pure narcotics may be combined with other uncontrolled substances to reach an "aggregate weight".' *People v. Brannon*, (App.Div.1977) 58 A.D.2d 34, 43, 394 N.Y. S.2d 974, 981. Similarly, in *State v. Land*, (N.J.1977) 73 N.J. 24, 372 A.2d 297, 304, it was held that a defendant could be convicted of possessing over 25 grams of marijuana notwithstanding the fact that a portion of the total weight of the substance was attributable to non-narcotic stalks and sterilized seeds. The non-narcotic ingredients were found to be covered by the statutory phrase, 'adulterants or dilutents,' which were includable in the aggregate weight."

389 N.E.2d 272.

In summary, we hold that because the statutes under which Grogg was convicted, Ind.Code 25–48–4–10 (Supp.1978), used the phrase "pure and adulterated," he was properly convicted of dealing in marijuana in excess of thirty (30) grams notwithstanding that a portion of the total weight of the material may have been attributed to non-narcotic stalks and sterilized seeds, or other adulterants or dilutents.

For the above reasons this cause is affirmed.

Affirmed.

ROBERTSON and RATLIFF, JJ., concur.