**Mark A. BURST, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–1185A304.**

Court of Appeals of Indiana, Fourth District.

Nov. 17, 1986.

Rehearing Denied Jan. 13, 1987.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

Mark A. Burst appeals his convictions of three counts of conversion (counts II, IV, and V), one count of dealing in a schedule III controlled substance (84 CR 11), two felony counts of dealing in marijuana (counts VI and VII), and one misdemeanor count of dealing in marijuana (Count I). He raises the following issues for our consideration:

(1) Did the trial court err in denying his motion to dismiss for misjoinder of offenses and motion for severance?

(2) Did the trial court err in denying his motion to dismiss 84 CR 11 where the state failed to bring him to trial within one year?

(3) Did the trial court err in refusing to order the state to produce its confidential informant for a deposition?

(4) Did the trial court err in denying his motion to dismiss based on the state's alleged discriminatory enforcement of the law?

(5) Did the trial court err in admitting the state's exhibits 9, 10, 11, and 12?

(6) Did the trial court err in admitting the state's exhibits 6 and 13?

(7) Did the trial court err in admitting hearsay evidence to establish the elements of the charges against him?

(8) Did the trial court err in admitting the state's exhibits 1, 2, 3, 4, 5, and 7?

(9) Is the evidence sufficient to support his conviction on Count VI for delivering more than thirty grams of marijuana?

(10) Is the evidence sufficient to support the verdict on all counts?

(11) Was the trial court's imposition of consecutive sentences manifestly unreasonable?

We affirm counts IV and V, reverse 84 CR 11, and reverse and remand counts I, II, VI, and VII for a new trial.

In December of 1982, undercover police officer Michael Hoover began a six month sting operation in Perry County. Upon Hoover's request, the police provided him a confidential informant to help infiltrate the criminal community. The informant was paid for his services. The informant met Burst and Billy Masterson, and introduced Hoover to them.

On three occasions during December and January, Hoover, accompanied by the informant, purchased from Burst a substance determined to be marijuana. On March 11, the informant called Hoover to set up the sale of a TV and VCR. Hoover purchased the items from Burst and Masterson.

Ralph Werner identified the items as ones which had been stolen from his business. The following night Burst sold Hoover three pills which were later determined to be Phendimetrazine, a schedule III controlled substance.

On April 18, Burst and Masterson sold Hoover eight typewriters. The typewriters were later identified as having been stolen from Cannelton High School. On May 20, Hoover purchased from Burst a .22 caliber Sturm & Ruger pistol, which was later identified by Cyril Powers as a gun that had been stolen from him. Based on these transactions, Burst was charged and convicted of three counts of dealing in marijuana, three counts of conversion, and one count of dealing in a schedule III controlled substance. He now challenges each of these convictions.

I.

Burst contends the trial court erred in allowing all of the counts to be tried together. He first argues the offenses were misjoined. IND.CODE 35-34-1-9(a) provides:

Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Burst's motion to dismiss for misjoinder was denied. Burst was charged with four drug dealing offenses and four theft related offenses. The offenses therefore were not joined on the basis of similarity under (a)(1) of IC 35-34-1-9; rather they were joined because they were "a series of acts connected together or constituting parts of a single scheme or plan." IC 35-34-1-9(a)(2). Burst engaged in a series of transactions with the same buyer, Officer Hoover. Hoover in essence became a business

associate who would buy Burst's drugs or fence Burst's illegally obtained merchandise. Even though the police sting operation facilitated the series of transactions, we examine the series of acts from Burst's viewpoint: he developed an ongoing relationship with Hoover, whom he presumed was his partner in crime. The purpose of the relationship was for Burst to make a profit from his criminal activities. The series of transactions involved the same primary figures: Burst, Hoover, Masterson, and the informant. We therefore conclude the offenses were properly joined under IC 35–34–1–9(a)(2).

Burst also argues the trial court erred in denying his motion for severance of the offenses. IND.CODE 35–34–1–11(a) provides:

Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;
(2) the complexity of the evidence to be offered; and
(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

As previously noted, the offenses were not joined solely because of similar character; therefore, the court was not required to grant severance upon demand. We must therefore determine whether the trial court, after considering the factors listed in 35–34–1–11(a), should have granted severance. We will reverse only if Burst can demonstrate clear error. *Dudley v. State* (1985), Ind., 480 N.E.2d 881, 894.

In *Sweet v. State* (1982), Ind., 439 N.E.2d 1144, our supreme court held that, where

multiple charges arose from activities conducted during a two month period and involved many ongoing transactions with the same undercover officers and same informants, no prejudice resulted to the defendant by the trial court's refusal to grant severance. Burst argues that *Sweet* is distinguishable, since the eight charges in that case were all drug-related and therefore similar in character. This argument is without merit since the court in *Sweet* would have been required to grant severance upon demand for offenses joined solely on the basis of similarity. IC 35–34–1–11(a).

The trial court was within its discretion in determining that Burst would not be prejudiced by a denial of severance. The number of offenses charged, eight, certainly was not unmanageable. Nor was the evidence complex, as the same primary figures were involved in the transactions. Further, the trier of fact demonstrated that it could distinguish the evidence and apply the law intelligently. The fact that it acquitted Burst on the burglary charge is evidence of this. Burst presents us with no evidence of any actual confusion. We therefore hold the trial court properly denied Burst's motion for severance.

## II.

Burst next contends the trial court erred in denying his motion to dismiss 84 CR 11 because the state failed to bring him to trial within one year. On March 12, 1984, Burst was charged in 84 CR 11 with dealing in a schedule III controlled substance. On March 21, the state moved to consolidate 84 CR 11 with 83 CR 62, which consisted of the other seven charges. The record does not indicate that Burst objected or agreed to the state's motion. On January 2, 1985, the trial court scheduled a jury trial on 83 CR 62 for May 13, 1985. Finally, on April 17 the trial court granted the state's motion to consolidate 83 CR 62 and 84 CR 11. Burst moved to dismiss 84 CR 11 on May 13, before trial pursuant to Ind.Rules of Procedure, Crim.Rule 4(C).

■ Criminal Rule 4(C) provides:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged.

The burden is first upon the state to see that the defendant is brought to trial within the one year period, and the defendant is not required to take affirmative steps to obtain trial within that period. *State v. Tomes* (1984), Ind.App., 466 N.E.2d 66, 70.[1]

■ The state argues Burst waived his right to a speedy trial under rule 4(C) by failing to object in January of 1985 when the trial court set the trial date for May 13, a date beyond the one year period. We disagree. When scheduled in January, the trial date of May 13 applied only to 83 CR 62. The fact that 83 CR 62 and 84 CR 11 were later consolidated does not cause Burst's opportunity to object to relate back to the January scheduling date.

The state argues that in January Burst treated the two cases as if they were consolidated. Whether Burst thought the judge would rule in favor of consolidation is irrelevant. The two cases were not officially consolidated until April 17, approximately one month and five days beyond the expiration of the one year time period. Therefore, the trial date of May 13 did not officially apply to 84 CR 11 until April 17.

■ Waiver by the defendant arises only where the defendant learns, within the period during which he could properly be brought to trial, that the trial court proposes an untimely trial date. *Tomes, supra* at 70; *State v. Rehborg* (1979), Ind.App., 396 N.E.2d 953, 954. In *Little, supra,* our supreme court stated:

> ... when *prior to the expiration of the period set by the rule,* the court sets a trial date which is beyond that period and the defendant is or should be aware that the setting is beyond that period, it is his obligation to object at the earliest opportunity so that the court can reset the trial for a date within the proper period. (Emphasis added.)

415 N.E.2d at 46 (*citing State ex rel. Wernke v. Superior Court* (1976), 264 Ind. 646, 348 N.E.2d 644; *State ex rel. Wickliffe v. Criminal Court* (1975), 263 Ind. 219, 328 N.E.2d 420; *Rehborg, supra* ).

■ In this case, as in *Tomes* and *Rehborg,* the defendant never had an opportunity to object at a juncture when timely proceedings could still have been commenced within the statutory period. Burst was not obligated to remind the court of the state's duty under Rule 4(C), *Schuck v. State* (1980), Ind.App., 412 N.E.2d 838, 840, nor was he obligated to see to it that the court rule on the state's consolidation motion within the statutory period. He objected prior to trial, and we conclude that was sufficient to avoid waiver. *Rehborg, supra* at 954. Therefore, the trial court erred in denying Burst's motion to dismiss 84 CR 11.

### III.

Burst next contends the trial court erred in refusing to require the state to produce its confidential informant. Burst requested the name and address of the informant as well as an opportunity to depose him.

■ The general policy is to prevent the disclosure of an informant's identity unless the defendant can show that disclo-

---

1. Burst received a change of judge and two continuances in 83 CR 62. The time periods involved may be properly charged against him in 83 CR 62, *Little v. State* (1981), 275 Ind. 78, 415 N.E.2d 44, but may not be charged against him in 84 CR 11, since the two cases had not been consolidated as of the time the change of judge and continuances were taken.

sure is relevant and helpful to the defense or is necessary for a fair trial. *Roviaro v. United States* (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; *Davenport v. State* (1984), Ind., 464 N.E.2d 1302. "Fundamental requirements of fairness," require restrictions on the government's privilege to refuse such disclosure, and whether the balance falls in favor of the public interest in protecting the flow of information or in favor of an individual's right to prepare his defense depends on the circumstances of each case. *Roviaro, supra* 353 U.S. at 60, 62, 77 S.Ct. at 627, 628.

In this case, officer Hoover revealed the name of the informant in one deposition, yet refused to provide the name both at a subsequent deposition and at trial. Assuming the name provided, William Hurst, was accurate, the issue then became his whereabouts and his production for deposition.

In *Ortez v. State* (1975), 165 Ind.App. 678, 333 N.E.2d 838, the court reversed and remanded the defendants' criminal convictions where the police paid the informant, effectively put him beyond the defendants' reach, and then refused to produce him for deposition. The state maintained it knew only that the informant was somewhere in California. There was evidence, however, that the informant had maintained telephone contact with the undercover officer.

In *Dorsey v. State* (1970), 254 Ind. 409, 260 N.E.2d 800, our supreme court reversed and remanded the defendant's case for a new trial where the state extensively used its informant, paid him and saw him off to California, and disobeyed a court order for his production. The supreme court quoted *Johns v. State* (1968), 251 Ind. 172, 240 N.E.2d 60, 64, where it had reasoned: "[A]n accused is not justly and fairly tried when his counsel is compelled to maneuver in a factual vacuum." *Dorsey, supra* 260 N.E. at 805.

■ The key issue in *Ortez* and *Dorsey* was one of materiality of the witness. Under our discovery rules a conviction may be reversed where the police negligently destroy or withhold material evidence. *Ortez, supra* 333 N.E.2d at 841. The *Ortez*

and *Dorsey* courts held that the informant's presence and active participation in the transactions made him a material witness.

Here, Burst has demonstrated Hurst's materiality as to four of the transactions. Hoover testified that he used Hurst to infiltrate the criminal community and that Hurst became his initial link to Burst and Masterson. Hurst was present at each of the alleged marijuana sales. In addition, he actively facilitated each sale. Hoover testified regarding the December 29 sale that it was Hurst who asked Burst where Hoover could buy some marijuana. He testified regarding the January 5 sale that Hurst got information from Burst about more marijuana to purchase. He testified regarding the January 17 sale that Hurst asked him if he wanted to buy the one-half bag of marijuana Burst had to sell. Likewise, Hurst facilitated the alleged sale of the VCR and TV. Hoover testified that Hurst was the one who called him and told him Burst and Masterson had the items to sell. Although there is no evidence that Hurst was actually present in the room when the transaction took place, he set up the sale and lived with Masterson in the apartment where the sale took place. We therefore conclude that, as to the three alleged marijuana sales and the alleged VCR and TV sale, Burst has demonstrated Hurst's materiality.

Here, as in *Ortez* and *Dorsey*, the informant was not a concerned citizen offering casual observations; rather, he was used repeatedly by police over a period of several months to establish contacts and facilitate and participate in the transactions involved. He was paid for his services and therefore was a "special employee" of the state. *See Ortez, supra* at 844.

The state maintains it does not know Hurst's whereabouts, except that he is somewhere in Texas. Hoover testified, however, that the police gave Hurst "money for relocation" for his safety (R. 565) and that Hurst has contacted him a few times by phone "just to see how things were going" (R. 572).

Like the *Ortez* court, we are not particularly concerned whether Hurst's absence was the result of negligent advice or the intentional withholding of evidence. What is crucial is not whether Burst would have called Hurst as a witness at trial but that Burst was denied an opportunity to evaluate Hurst's knowledge of the transactions. *Ortez, supra* at 845. The state did not need Hurst to make its case, but that should not have precluded Burst from having the benefit of his testimony, if he so chose.[2]

We would emphasize that our holding on this issue is limited to the facts presented. We in no way wish to intimate that the state must babysit informants or prepare a defendant's case for him. In cases such as this one, however, where the state actively makes its "special employee" unavailable to the defendant and where the defendant demonstrates the materiality of the "special employee" we must reverse and remand counts I, II, VI, and VII so that the defendant may receive a fair trial.[3]

### IV.

Burst next contends the trial court erred in denying his motion to dismiss all counts based on the state's alleged discriminatory enforcement of the law. Specifically, he argues that the fact that the prosecutor's plea bargain did not offer him a fine rather than an executed sentence constituted discrimination against him because he was indigent. We disagree.

A prosecuting attorney is vested with broad discretion in the performance of his or her duties. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102, 1109. "[T]he mere fact that two or more individuals are charged with the same or similar offenses does not necessarily require that a plea offer made to one be extended to all." *United States v. Bell* (1974), D.C.Cir., 506 F.2d 207, 221.

Although laws and procedures which discriminate against indigent defendants are inconsistent with the promise of equal protection, *Brown v. State* (1975), 262 Ind. 629, 322 N.E.2d 708, 712, Burst has in no way demonstrated a lack of rational justification for his treatment. We therefore hold that the prosecutor was within his discretion in not offering Burst the option of a fine.

### V.

Burst next contends the trial court erred in admitting the state's exhibits 9, 10, 11, 12. The exhibits consisted of a photograph of a pistol and holster, a gun registration slip, a holster, and a pistol. Defense counsel raised the following objection during the trial:

MR. MEYER: My objection at this time, Your Honor, to all four of those exhibits would be again the same as the introduction of the evidence of the marijuana earlier in that the chain of custody has not been shown to have been established between the items that Mr. Hoover took to the State Police Post and that Mr. Powers picked up at a later date. There is apparently someone who is in the middle of that chain of custody at the Jasper State Police Post who has not been produced to testify as to the identity of these articles. Absent that, it is not sufficient to introduce that gun, the picture, the copy of the registration and the holster into evidence.

---

**2.** To say that the court's error in not requiring the state to produce Hurst did not contribute to the convictions on the four counts involved would be grossly speculative, as Burst was given no opportunity even to evaluate Hurst's knowledge of the transactions.

**3.** Several cases have distinguished *Ortez.* Notably, in *Gorman v. State* (1984), Ind., 463 N.E.2d 254, and *Boyd v. State* (1983), Ind., 454 N.E.2d 401, the defendant knew the informant's address at a New York State prison, and the new Indiana statute for nonresident witnesses enacted since *Ortez* provides that the court may compel a witness to appear if the state in which the witness resides has a statute which permits this process. We note that even the new statute, IND.CODE 35–37–5–5, would not affect this case, since Burst knew only that Hurst was somewhere in Texas, and he was never provided with an address.

(R. 625–626) In his motion to correct errors, Burst complains that the state failed to establish the chain of custody of the pistol while at the police station and that the state failed to identify the pistol as the one Burst sold to Hoover.

◼ Because Burst fails to raise any error in his motion to correct errors regarding the photograph, the registration slip, and the holster, he has failed to preserve any error committed by the trial court in admitting those exhibits. Ind.Rules of Procedure, Trial Rule 59(D). We also conclude that Burst has waived any error regarding the state's failure to identify the pistol as the one Burst sold to Hoover since Burst failed to object on that basis during trial. The only basis for his timely in-court objection was the state's alleged failure to establish the chain of custody of the pistol while it was at the police station. A party may not object on one basis at trial and on a different basis on appeal. *Golden v. State* (1985), Ind., 485 N.E.2d 51, 57. Therefore, Burst's attempt to add a new basis for the objection is unavailing.

The question left for our review is whether the state established the chain of custody of the pistol while it was at the police station. We conclude that there was no need for a strict showing of the chain of custody.

◼ The purpose of the chain of custody rule is to avoid any claims of substitution, tampering, or mistake. *Wolfe v. State* (1978), 270 Ind. 81, 383 N.E.2d 317, 318. The rule applies with diminishing strictness as the exhibits become decreasingly susceptible to alteration, tampering, or substitution. *Bigham v. State* (1984), Ind., 469 N.E.2d 743, 744.

◼ Hoover testified that he kept the pistol locked in his briefcase, which was either locked in the trunk of his car or was in his home, until he took it to the police station and deposited it with the property clerk. No one except Hoover had access to the contents of the briefcase. Cyril Powers testified he picked up the pistol at the police station, having identified it by serial number as one of the guns stolen from him. Burst's argument that there may be thousands of .22 caliber Sturm & Ruger pistols in use is unpersuasive. We conclude that given the nonfungible nature of the pistol, the serial number identification by Powers, and the lack of any realistic threat of tampering, alteration, or substitution, the state was not required to establish a strict chain of custody. Therefore, the trial court properly admitted the pistol as evidence.

## VI.

Burst next contends the trial court erred in admitting the state's exhibits 6 and 13. The exhibits consisted of photographs of a VCR and TV.[4] Specifically, Burst argues that Werner's inability to positively state that the VCR and TV in the photos were the same ones stolen from his business renders the photos inadmissible.

◼ Testimony by an owner that photographs were of items similar to those taken from him is sufficient to establish their relevancy and materiality. *Stout v. State* (1985), Ind., 479 N.E.2d 563. Absence of certainty goes to the weight rather than the admissibility of the evidence. *Stout, supra* at 567.

Werner testified repeatedly that the photographs accurately depicted his VCR and TV. After persistent questioning, defense counsel got Werner to admit he was not absolutely certain the items in the photos were his. We conclude that any lack of certainty went to the weight of the evidence. The trial court, therefore, properly admitted the photographs.

## VII.

Burst next contends the trial court erred in admitting, over Burst's hearsay objections, certain out of court statements made

---

**4.** We address this issue only because it is the basis of Burst's sufficiency of evidence challenge discussed in section X, and a finding of insufficient evidence would require a complete reversal rather than a new trial.

by Masterson. Although Masterson was not present to testify at trial, Hoover testified as to certain statements made by him in connection with the sale of the typewriters and the VCR and TV.

■ The state contends the statements are admissible under the res gestae exception to the hearsay rule. Happenings near in time and place which complete the story of the crime are admissible under the theory of res gestae even though such testimony might be otherwise objectionable. *Jones v. State* (1985), Ind., 472 N.E.2d 1255, 1259. A victim's testimony about an accomplice's statements made during the course of committing a crime is admissible against a defendant under res gestae. *Arnold v. State* (1984), Ind., 460 N.E.2d 494, 497. Here, Hoover merely related statements made by the accomplice, Masterson, during the course of the sales. The statements therefore completed the story and were properly admitted by the trial court.

## VIII.

Burst next contends the trial court erred in admitting the state's exhibits 1, 2, 3, 4, 5, and 7. The exhibits consisted of five bags containing a substance determined to be marijuana and one bag containing one and a half pills determined to be Phendimetrazine.[5] Specifically, Burst argues the state failed to establish the chain of custody of the bags.

■ As previously noted, the purpose of the chain of custody rule is to avoid any claim of substitution, tampering, or mistake. *Wolfe, supra* 383 N.E.2d at 318. The state is not required to exclude every remote possibility of tampering but must only provide reasonable assurance that the exhibit has passed through various hands in an undisturbed condition. *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 497. The mere possibility of tampering therefore will not break the chain, and it is the jury's prerogative to weigh the facts and

come to a reasonable conclusion. *Whitt v. State* (1985), Ind., 483 N.E.2d 49, 51.

■ The record reveals that each time Hoover made a purchase, he marked the bags with his name and the date, locked them in his briefcase, and kept them either locked in the trunk of his car or in his home until he took them to the police. Although Hoover's wife and children had access to the room in which he kept his briefcase, Hoover was the only one with keys to the briefcase and was therefore the only one with access to its contents. He also was the only one with keys to the trunk of his car. Hoover took the bags to police chemist Bowles, who marked the bags, tested the contents, sealed the bags with evidence tape, and placed them in the vault. Only five people had access to the combination to the vault, and police procedure requires that items must be logged in and out. The bags remained in the vault until just before trial, when Hoover picked them up. Hoover again kept the bags locked in his briefcase, and kept the briefcase either in his home or locked in the trunk of his car until he brought the bags to court.

Burst argues that the fact that other people had access to the bags breaks the chain of custody. We disagree. First of all, Hoover's family had access only to the briefcase and not to the key. Therefore, his family did not have access to the bags contained in the briefcase. Secondly, the fact that five people had access to the vault does not break the chain. *See Russell v. State* (1986), Ind., 489 N.E.2d 955 (chain was not broken where property room employees had access to the property room). We hold that any possibilities of tampering were remote, and the state was not required to exclude those possibilities. The trial court therefore properly admitted the exhibits.

## IX.

■ Burst next contends the evidence regarding count VI is insufficient to estab-

**5.** We need not address this issue with regard to the Phendimetrazine, since our holding in section II is dispositive. We address this issue with regard to the marijuana counts only because it is the basis of Burst's sufficiency of evidence challenge in section X.

lish that he sold more than 30 grams of marijuana.[6] Chemist Bowles tested the contents of the bags and found the bags contained marijuana. He also found them to contain some other vegetable material. The total weight of the substance in the two bags was 52.2 grams. According to IND.CODE 35–48–4–10, the offense of dealing in marijuana becomes a class D felony when the amount involved exceeds 30 grams.

Burst argues, based on our holding in *Romack v. State* (1983), Ind.App., 446 N.E.2d 1346, that only that part of the mixture determined to be pure marijuana may be used in calculating the amount of 30 grams. Since *Romack*, our supreme court has spoken on the issue and has held that the total weight of the delivered drug and not just its pure component is to be considered in affixing the penalty. *Tobias v. State* (1985), Ind., 479 N.E.2d 508; *Lawhorn v. State* (1983), Ind., 452 N.E.2d 915. Although *Tobias* and *Lawhorn* dealt with IND.CODE 35–48–4–1 and not IC 35–48–4–10, we believe that the supreme court's reasoning would include marijuana sales under IC 35–48–4–10. The supreme court's focus is on the usage and meaning common in drug trafficking as well as the statutory meaning.

The two statutory sections are similarly constructed.[7] Both, when mentioning the basic offense of dealing, use the phrase "pure or adulterated." Neither, when affixing an additional penalty for large quantities, specifically reiterates the "pure or adulterated" condition. Our supreme court has said that the phrase "the drug" in the second sentence of IC 35–48–4–1 can only refer to the drug involved in the basic offense, as it is listed in the first sentence. E.g. a "pure or adulterated" drug. *Lawhorn, supra* at 917.

Following our supreme court's interpretation, we are compelled to hold that the phrase in IC 35–48–4–10(b), "the offense specified in subsection (a)," causes the added penalty to affix even where the drug is "adulterated." We therefore conclude that the supreme court's holdings in *Tobias* and *Lawhorn* apply in affixing the added penalties for large quantities under IC 35–48–4–10. The evidence is therefore sufficient to support the jury's finding on count VI that Burst delivered more than 30 grams of "pure or adulterated" marijuana.

### X.

Burst next contends the evidence is insufficient to support his convictions on all seven counts.[8] When reviewing a claim of insufficient evidence, we neither weigh the

---

**6.** We address this because finding in Burst's favor on this issue would require a complete reversal rather than just a new trial.

**7.** IC 35–48–4–1 provides:
A person who:
(1) knowingly or intentionally manufactures or delivers cocaine or a narcotic drug, *pure or adulterated,* classified in schedule I or II; or
(2) possesses, with intent to manufacture or deliver, cocaine or a narcotic drug, *pure or adulterated,* classified in schedule I or II;
commits dealing in cocaine or a narcotic drug, a Class B felony. However, the offense is a Class A felony if the amount of *the drug* involved weighs three (3) grams or more, or if the person delivered the drug to a person under eighteen (18) years of age at least three (3) years his junior. (Emphasis added.)
IC 35–48–4–10 provides in part:
(a) A person who:
(1) knowingly or intentionally manufacturers [sic] or delivers marijuana, hash oil, or hashish, *pure or adulterated;* or

(2) possesses, with intent to manufacture or deliver, marijuana, hash oil, or hashish, *pure or adulterated;*
commits dealing in marijuana, hash oil, or hashish, a Class A misdemeanor.
(b) However, *the offense specified in subsection (a)* is:
(1) a Class D felony if:

. . . . .

(B) the amount involved is more than thirty (30) grams but less than ten (10) pounds of marijuana or two (2) grams but less than three hundred (300) grams of hash oil or hashish[.] (Emphasis added.)

**8.** We need not address this issue as to 84 CR 11, since section II is dispositive. We address this issue with regard to the three marijuana counts and the VCR and TV count only because a finding in favor of Burst would require a complete reversal.

evidence nor judge the credibility of witnesses. Instead, we must examine the evidence most favorable to the verdict, together with reasonable inferences to be drawn therefrom. If there is evidence of probative value to support the verdict, it will not be disturbed. *Wright v. State* (1985), Ind., 474 N.E.2d 89, 91–92.

■ Burst was convicted under IND. CODE 35–43–4–3 of three counts of conversion. That section provides:

A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor.

Hoover testified, as to count II, that Masterson sold him a VCR and TV and that Burst and Masterson conferred about the price Hoover would be required to pay. When Hoover gave Masterson the money, he saw him count it and give part of it to Burst. Hoover identified the photographic exhibits as accurately depicting the items he had purchased; Werner identified the photographic exhibits as accurately depicting the items stolen from his business.

Burst bases his sufficiency claim on the state's alleged failure to link the VCR and TV Hoover purchased to the VCR and TV stolen from Werner's business. Werner's lack of absolute certainty regarding the photographs merely affects the weight to be given them. We conclude that there was substantial evidence of probative value from which the jury could have found beyond a reasonable doubt that Burst converted Werner's property.

Burst's sufficiency challenge regarding the sale of the typewriters is also based on the state's alleged failure to link the typewriters Hoover purchased to those stolen from Cannelton High School. Specifically, Burst asserts that the state's failure either to have Hoover reveal the serial numbers in court or to have him identify the typewriters is fatal to the state's case. We disagree.

The record indicates that Hoover purchased eight typewriters from Masterson, whom he saw divide the money with Burst.

Hoover wrote down the serial numbers and took the typewriters to the police station. Later, School Superintendent Lane picked up the typewriters from the station, and after having Ms. Schmitt run down the serial numbers, determined they were the ones which had been stolen. Ms. Schmitt identified state's exhibit 15 as the list of serial numbers of the missing typewriters and testified the numbers matched those on the typewriters recovered.

The fact that Hoover did not submit his list of serial numbers is not fatal, given the evidence linking Burst to the typewriters stolen from the · school. Masterson told Hoover the typewriters had come from a school. Hoover took them to the police station, where they were picked up and identified by Cannelton school officials. We therefore conclude the evidence is sufficient to support the jury's verdict on this count.

Burst's sufficiency challenge regarding the sale of the pistol is also based on the state's alleged failure to have Hoover identify the pistol and thereby connect it to Burst. As with the typewriter sale, the circumstantial evidence is sufficient to support the conviction on this count as well.

The record indicates Masterson told Hoover that Burst had a "hot" pistol to sell. Hoover purchased the pistol and its holster and took them to the police station, where Powers later identified by serial number his pistol, which had been stolen. Powers also identified the items in court when they were admitted as evidence. The fact Hoover was not shown the pistol for identification in court therefore is not fatal given the circumstantial evidence linking Burst to the pistol stolen from Powers. We conclude a reasonable juror could have found Burst guilty beyond a reasonable doubt of converting Powers' pistol.

As best we can discern, Burst's sufficiency challenge regarding each of the dealing counts is based on the state's alleged failure to establish the chain of custody of the bags of drugs. His argument is not sufficiently specific to meet the requirements of Ind.Rules of Procedure, Appellate Rule

8.3(A)(7). He therefore has failed to preserve it for review.

Even absent waiver, the exhibits were properly admitted.[9] The evidence is therefore sufficient to sustain the convictions for dealing in marijuana.

## XI.

Finally, Burst contends the trial court erred in imposing consecutive sentences and in failing to consider mitigating circumstances. Because we affirm only counts IV and V we need not address this issue. Burst's sentences on these two class A misdemeanor conversion counts were imposed concurrently and the one year sentence on each is proper under IND. CODE 35–50–3–2. As previously discussed, we reverse 84 CR 11, which accounted for ten years of the fifteen-year sentence imposed. We reverse and remand counts I, II, VI, and VII for a new trial. We therefore will not render an advisory opinion as to the sentences imposed on those counts.

Accordingly, we affirm in part and reverse in part.

CONOVER, P.J., concurs.

MILLER, J., concurs.