# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana



FILED
May 24 2012, 8:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SAMANTHA ADAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1107-CR-372 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jose Salinas, Judge
Cause No. 49G14-1002-FD-6589

**May 24, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Samantha Adams (Adams), appeals the trial court's denial of her motion to dismiss.

We affirm.

## ISSUE

Adams raises one issue on appeal, which we restate as follows: Whether the trial court denied her due process because the Indiana Code does not define the term "mature stalks" in its definition of marijuana, and the provision is therefore vague and void.

## FACTS AND PROCEDURAL HISTORY

On December 22, 2009, Detective Randy Dings (Detective Dings) of the Indianapolis Metropolitan Police Department's Drug Task Force executed a search warrant at Adams' residence in Indianapolis, Indiana, as part of an ongoing narcotics investigation. During the search, the Task Force found two small marijuana plants in each of the upstairs bedroom closets, three small plants in the closet of a child's bedroom, and three larger plants in Adams' master bedroom closet. Detective Dings also found some plastic baggies, grinders, and a digital scale containing marijuana residue on a coffee table in the living room.

On December 23, 2009, Linda McCready (McCready), a forensic scientist with the Indianapolis/Marion County Forensics Services Agency (IMCFSA), found that the "wet weight" of the plants, which is the weight of the plants when they are fresh, was 266.99

grams. (Transcript p. 16). McCready allowed approximately two weeks for the plants to dry and then determined that their "dry weight" was 69.20 grams. (Tr. p. 16).

On February 4, 2010, the State filed an Information charging Adams with Count I, dealing in marijuana, a Class D felony, Ind. Code § 35-48-4-10; and Count II, possession of marijuana, a Class D felony, I.C. § 35-48-4-11. The State enhanced her charges from Class A misdemeanors to Class D felonies because the weight of the marijuana was greater than 30 grams. *See* I.C. §§ 35-48-4-10(b)(1)(B), -35-48-4-11. On July 1, 2010, Adams filed a motion to dismiss the felony charges, alleging that the dried weight of the marijuana should have been 17.35 grams rather than 69.20 grams.

On February 10, 2011, the trial court held a hearing on the motion to dismiss. At the hearing, McCready explained the procedure she used to measure the marijuana. First, she noted that she had cut off the "mature stalks" of the plants before weighing them because it was her understanding that mature stalks are excluded from the definition of marijuana. She testified that she could not find a legal definition of "mature stalks" despite consulting two prosecutors. As a result, she followed IMCFSA lab procedures specifying that the delineation between mature and immature stalks occurs at the point where a marijuana stalk turns from brown to green, around the first branch of each stalk. Thus, McCready removed the roots and stalk up to the first branch of each plant and weighed the remaining leaves, immature stalks, and stems together.

On cross-examination, Adams' counsel asked McCready whether she knew if other State crime labs used different procedures to weigh marijuana. McCready

3

responded that she knew it was possible that other labs might use different procedures, but that she did not know of any. Subsequently, Adams submitted Defendant's Exhibit E, which was an Indiana State Police Physical Evidence Bulletin (the Bulletin) from the Indiana State Police Laboratory Division (the State Police Lab) regarding the submission of drugs and controlled substances to the State Police Lab. The Bulletin advised that "[w]here the evidence consists of large quantities of marijuana plants, the plants should be photographed, leaf material stripped from plants and dried before submission." (Defendant's Exh. E).

At the end of the hearing, the trial court took Adams' motion to dismiss under advisement, and on March 31, 2011, the trial court denied the motion. On June 2, 2011, Adams filed a petition for certification of the trial court's Order for interlocutory appeal. On December 22, 2011, this court accepted jurisdiction.

Adams now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Adams now argues that the enhancement of her charges from Class A misdemeanors to Class D felonies violated her right to due process because the Indiana Code does not clearly state which parts of a marijuana plant are excluded from the legal definition of marijuana. Marijuana is a Schedule I controlled substance under I.C. § 35-48-2-4(d)(22). Possession of 30 grams or less of marijuana is a Class A misdemeanor under Indiana Code § 35-48-4-11(1), and dealing 30 grams or less of marijuana is a Class A misdemeanor under I.C. § 35-48-4-10(a)(2). Possession of more than 30 grams of

4

marijuana and dealing more than 30 grams of marijuana are both Class D felonies under

I.C. §§ 35-48-4-10(a)(2); 35-48-4-11(i).

> I.C. § 35-48-1-19, (emphasis added), defines marijuana as

> any part of the plant genus cannabis whether growing or not; the seeds thereof; the resin extracted from any part of the plant, including hashish and harsh oil; any compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the *mature stalks* of the plant; fiber produced from the stalks; oil or cake made from the seeds of the plant; any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except resin extracted therefrom); or the sterilized seed of the plant which is incapable of germination.

As McCready testified at trial, it was IMCFSA's policy to exclude the lower portion of each marijuana stalk below the lowest branch prior to weighing the marijuana plant, whereas Defendant's Exhibit E demonstrated that the State Police Lab sometimes excluded the entire marijuana stalk in its calculation of the weight of marijuana. According to Adams, if all of the stalks and stems had been excluded prior to IMCFSA's calculation of the marijuana's weight, the resulting weight could have been approximately 17.35 grams rather than over thirty grams. (Appellant's App. p. 34). Thus, Adams claims that as the Indiana Code does not define "mature stalks," and experts in the field interpret it differently, the statute is unconstitutionally vague and void, and she was denied due process.

### I. *Waiver*

Preliminarily, we must address the issue of waiver because the State alleges that Adams' motion to dismiss was untimely and lacked the requisite factual support. In

5

support of its argument, the State cites I.C. § 35-34-1-4, which declares that a motion to dismiss "shall be made twenty (20) days" prior to the omnibus date if the defendant is charged with a felony. The statute further specifies that "[a] motion made thereafter *may* be summarily denied . . . ." I.C. § 35-34-1-4(b) (emphasis added). First, we note that I.C. § 35-34-1-4(b) allows the trial court discretion to deny an untimely motion, as is evident in its use of the permissive "may." In addition, both our supreme court and this court have considered challenges to the constitutionality of criminal statutes even when a defendant has failed to file a proper motion to dismiss. In *Price v. State,* 911 N.E.2d 716, 718 (Ind. Ct. App. 2009), *trans. denied,* for example, Price argued that I.C. § 35-46-3-12 was unconstitutionally vague. We addressed his claim on the merits even though Price had failed to file a motion to dismiss and the State had raised the issue of waiver. *Id.* at 718-19. Likewise, we will address Adams' argument.[1]

## II. *Due Process*

Turning to the merits of Adams' due process claim, we note that we review the denial of a motion to dismiss for an abuse of discretion. *West v. State,* 942 N.E.2d 862, 866 (Ind. Ct. App. 2011). A trial court has abused its discretion when its decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. *Stuff v. Simmons,* 838 N.E.2d 1096, 1099 (Ind. Ct. App. 2005), *trans. denied*.

---

[1] We also decline to find that Adams' motion lacked the requisite factual support.

When the validity of a statute is challenged, we begin with a presumption of constitutionality. *Boyd v. State,* 889 N.E.2d 321, 324 (Ind. Ct. App. 2008), *trans. denied.* Due process principles advise that a penal statute is void for vagueness if it does not clearly define its prohibitions. *Brown v. State,* 868 N.E.2d 464, 467 (Ind. 2007). A criminal statute may be invalidated for vagueness for either of two independent reasons: (1) failing to provide notice enabling ordinary people to understand the conduct it prohibits, or (2) the possibility that it authorizes or encourages arbitrary or discriminatory enforcement. *Id.* A statute "is not void for vagueness if individuals of ordinary intelligence could comprehend it to the extent that it would fairly inform them of the generally proscribed conduct." *Id.* (quoting *Klein v. State,* 698 N.E.2d 296, 299 (Ind. 1998)). In addition, the statute does not have to specifically list all items of prohibited conduct; rather, it must inform the individual of the conduct generally proscribed. *Id.* We examine a vagueness challenge in light of the facts and circumstances of each individual case. *Id.*

## A. *Dealing in Marijuana*

Significantly, we note that Indiana courts have traditionally treated dealing in marijuana differently than possession of marijuana based on the distinction between pure and adulterated marijuana. For purposes of this opinion, "pure" marijuana is marijuana as defined in I.C. § 35-48-1-19, whereas "adulterated" marijuana may include "other vegetable matter" not fitting within the definition of marijuana. *See Allison v. State,* 527 N.E.2d 234, 238 (Ind. Ct. App. 1988), *trans. denied.* In early cases, this court disagreed

as to whether the aggregate weight of marijuana used to support an offense enhancement could only consist of the "pure" component of the marijuana recovered or adulterated marijuana. *Lycan v. State,* 671 N.E.2d 447, 458 (Ind. Ct. App. 1996) (comparing *Grogg v. State,* 417 N.E.2d 1175 (Ind. Ct. App. 1981) with *Romack v. State,* 446 N.E.2d 1346 (Ind. Ct. App. 1983)). In *Grogg,* we held that the total weight of a recovered substance in its adulterated form could be used to support an enhancement to a Class D felony for a charge of dealing in marijuana but not for a charge of possession of marijuana. *Grogg,* 417 N.E.2d at 1179. The *Grogg* court reasoned that the provisions concerning dealing in marijuana refer to marijuana in its "pure or adulterated form," whereas the provisions concerning possession of marijuana omit the words "pure or adulterated." *See id.* In contrast, in *Romack* we held that only pure marijuana could be used to enhance either charge. *Romack,* 446 N.E.2d at 1353.

Subsequently, however, our supreme court analyzed the statutory provisions concerning dealing in cocaine in *Lawhorn* and concluded that the "total amount of the substance delivered, including nonnarcotic substances which have been mixed into the drug, 'is the statutory meaning as well as the usage and meaning common in drug trafficking.'" *Lawhorn v. State,* 452 N.E.2d 915, 917 (1983). Thus, an offense enhancement for dealing in cocaine could be supported by reference to the "weight of the entire substance delivered by the dealer"—in other words, its adulterated form. *Id.* In *Burst*, we found that the statutory provisions for dealing in cocaine and dealing in marijuana were similarly constructed and concluded that *Lawhorn*'s holding also applied

8

to felony enhancements for dealing in marijuana. *Burst v. State,* 499 N.E.2d 1140, 1150 (Ind. Ct. App. 1986), *reh'g denied*, *trans. denied*.

Based on this precedent, we conclude that the issue of identifying mature stalks is irrelevant for determining whether Adams dealt at least 30 grams of marijuana because it is clear that a sentence enhancement for dealing in marijuana may be supported by an adulterated form of marijuana, which includes "other vegetable material" not included within the definition of marijuana. *See Allison,* 527 N.E.2d at 238. Accordingly, we conclude that the trial court did not deny Adams due process in denying her motion to dismiss with respect to her dealing in marijuana charge.

## B. *Possession of Marijuana*

Although we analyzed *Lawhorn*'s application to the Indiana Code's provisions concerning dealing in marijuana in *Burst*, we have yet to address its application to the provisions regarding possession of marijuana. Significantly, after our holding in *Grogg* that adulterated marijuana could not support a sentence enhancement for a possession of marijuana charge due to the fact that the legislature had omitted the terms "pure or adulterated" from the Indiana Code provisions regarding possession, the General Assembly amended the statute. I.C. § 35-48-4-11 now reads: "A person who [] knowingly or intentionally possesses (pure or adulterated) marijuana . . . commits possession of marijuana . . . a Class A misdemeanor. However, the offense is a Class D felony [] if the amount involved is more than thirty (30) grams of marijuana . . . ." We

9

must now interpret whether adulterated marijuana may support a sentence enhancement for possession of marijuana in light of this amendment.

The interpretation of a statute is a question of law reserved for the courts. *Boyd,* 889 N.E.2d at 324. If a statute is unambiguous, *i.e.*, susceptible to only one meaning, we must give the statute its clear and plain meaning. *Id.* However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to accomplish that intent. *Id.* In ascertaining the legislature's intent, we assume that "the legislature did not enact a useless provision" such that "[w]here statutory provisions are in conflict, no part of a statute should be rendered meaningless but should be reconciled with the rest of the statute." *Id.* (quoting *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d 941, 948 (Ind. 2001)).

Due to the similarity between the current provisions for dealing in marijuana and possession of marijuana, we conclude that the reasoning in *Lawhorn* and *Burst* now also applies to possession of marijuana. Specifically, as we stated in *Burst*, the basic offense mentions "pure or adulterated," and does not reiterate "pure or adulterated" in the second sentence, which affixes an additional penalty for large quantities. *Burst,* 499 N.E.2d at 1150. Thus, as our supreme court concluded with regard to the similarly constructed cocaine provisions, the marijuana mentioned in the second sentence can only refer to the "pure or adulterated" marijuana referred to in the first sentence. *See Lawhorn,* 452 N.E.2d at 917. We therefore find that the legislature intended a sentence enhancement to

apply to possession of more than thirty grams of adulterated marijuana, as well as possession of more than thirty grams of pure marijuana.

In light of our interpretation of I.C. § 35-48-4-11, we cannot agree with Adams that the definition of marijuana is vague and the statute void as unconstitutional. As we stated above, we must examine a vagueness challenge in light of the facts and circumstances of each individual case, rather than hypothetical situations. *Brown,* 868 N.E.2d at 467. Here, the definition of mature stalks is irrelevant because the mature stalks of Adams' marijuana constitute adulterated marijuana and will thus support her sentence enhancement. Accordingly, we conclude that the definition of mature stalks is not unconstitutionally vague in light of the facts and circumstances here, and the trial court did not abuse its discretion in denying Adams' motion to dismiss.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Adam's motion to dismiss because the definition of marijuana is not unconstitutionally vague.

Affirmed.

NAJAM, J. and DARDEN, J. concur

11