JAMES KEITH MCCARTY *v.* STATE OF INDIANA.

[No. 1-1274A181. Filed December 29, 1975. Rehearing denied February 4, 1976. Transfer denied June 1, 1976.]

*Michael J. Tosick, James L. Brand,* of Greenfield, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

LOWDERMILK, J.—In this action James Keith McCarty, defendant-appellant (McCarty) was convicted of the offense of sale of dangerous drugs, and the court passed sentence for a period of not less than one nor more than ten years and a fine of $1,000.00.

The motion to correct errors which was overruled presents five specifications of error, each of which is relied upon and discussed in McCarty's brief.

## FACTS

Dennis Springer, a musician of the age of 20 years, was employed as an S.E., which is classified as Special Employee,

of the Indiana State Police. He was not on salary. Springer was working with State Trooper Donald Brackman, who was assigned to the Narcotics and Dangerous Drugs Section. Springer met with him on August 18, 1972, and made arrangements to purchase drugs from McCarty, whom Springer, as an informant, had determined was trafficking in **marijuana** and other dangerous drugs and had previously purchased drugs from him.

At the meeting with Brackman an electronic transmitter was placed on the person of Springer. Brackman had a receiving device in his unmarked automobile by which he could receive conversations from the transmitter.

Springer went to a place of residence where McCarty was talking to other people where he discussed music and asked to buy mescaline and was told it was available, along with marijuana.

Springer and McCarty then went in Springer's car to McCarty's residence where Springer bought two bags of marijuana and an ounce of mescaline, for which he paid $40.00, with money that had been furnished by the State Police.

Two bags of suspected drugs were turned over by Springer to Officer Brackman who initialed each bag and placed the bags in a larger plastic bag, which he initialed and numbered and placed in a brief case which was then placed in the trunk of his vehicle. The bags were removed from the car trunk four days later, and were then taken to the State Police Laboratory in Indianapolis.

Officer Brackman testified that he could identify the voices of Springer and McCarty from the signals he received from Springer's transmitter. He related the conversation between the two men at trial, as well as at a hearing on a motion to suppress.

I.

McCarty's first issue under his motion to correct errors is that the trial court erred in overruling his motion to

suppress the evidence that was intercepted by means of electronic surveillance. This evidence was given in the direct testimony of Officer Brackman at the hearing on McCarty's motion to suppress and also in the trial of the cause.

Springer, the S.E. of the Indiana State Police, also testified at the trial to the same facts testified to by Officer Brackman.

McCarty relies for reversal on an alleged violation of the Fourth Amendment to the United States Constitution, in that Springer sought out McCarty and gained entry into his home by trickery and deception, after which Officer Brackman was present by means of the electronic hook-up. McCarty urges that this was a warrantless penetration or entry into his premises by the State and that fruits of that unlawful entry are not admissible in a trial against him.

McCarty relies on the case of *Katz* v. *United States* (1967), 389 U.S. 347, wherein the United States Supreme Court determined that the bugging of a telephone booth was a violation of defendant's rights to be free of unlawful search and seizure.

First, it is plain that Springer was invited into a home where he met McCarty and others. Springer discussed a possible buy with McCarty and some of the others present. After being informed that McCarty had the contraband, Springer went with McCarty to his home. There is no evidence that any of the conversations were anything but voluntary on the part of McCarty. Thus, the only issue presented is whether the use of the transmitter violated McCarty's rights. This issue has been foreclosed by the case of *United States* v. *White* (1971), 401 U.S. 745, 753, wherein the court said:

". . . but we are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question.

"It is thus untenable to consider the activities and reports of the police agent himself, though acting without a

warrant, to be a 'reasonable' investigative effort and lawful under the Fourth Amendment but to view the same agent with a recorder or transmitter as conducting an 'unreasonable' and unconstitutional search and seizure. . . ."

## II.

McCarty's second specification of error involves the trial court's finding that probable cause existed prior to the State's setting into motion the scheme which resulted in the arrest and conviction of the defendant (McCarty). McCarty admits the State may prove probable cause by reliable or trustworthy hearsay, but contends there was no attempt by the State to prove the reliability or trustworthiness of the hearsay evidence relied on by it.

The State agrees with McCarty that the State must prove law enforcement officers had probable cause to suspect the defendant was engaged in illegal conduct before it sets in motion its scheme to trap him. *Kramer* v. *State* (1974), 161 Ind. App. 619, 317 N.E.2d 203. McCarty's contention regarding the standard of proof necessary for the effective establishment of *probable cause* to permit the setting into motion of the aforementioned scheme, and the State's failure to prove reliability or trustworthiness of the informant, is based on the cases of *Hughley* v. *State* (1974), 161 Ind. App. 583, 316 N.E.2d 586, and *Bowles* v. *State* (1971), 256 Ind. 27, 267 N.E.2d 56. We have determined neither of these cases apply to probable cause in entrapment cases, but apply to the probable cause requirement in search and arrest cases. There is a distinction with regard to these standards. *Locklayer* v. *State* (1974), 162 Ind. App. 64, 317 N.E.2d 868, 872, n. 3, holds:

"All that is necessary in an entrapment case is evidence that shows *probable cause for suspecting the defendant;* while a higher standard is required in the search and arrest cases." (Original emphasis.)

From the above, we have determined that McCarty's argument must fail.

McCarty had a reputation as a source for obtaining drugs in the New Castle area, and had been the object of an intensive investigation from May of 1972.

McCarty had informed Springer only three days before Springer made the buy from him that he had narcotics for sale. Springer also had on prior occasions obtained drugs from McCarty.

It is our opinion that the evidence hereinabove stated sufficiently established *probable cause* to justify informer Springer's solicitation of McCarty, and there was no error in the court's overruling the motion to suppress.

### III.

McCarty's third specification of error was that the trial court erred in partially overruling his motion in limine.

McCarty's motion in limine requested that the court instruct the prosecution, counsel and witnesses not to mention, refer to or interrogate or attempt to convey to the jury in any manner any facts pertaining to the possession of a white powdery substance, mescaline, or LSD, or that the prosecution had caused an analysis to be made of a white powdery substance, without first obtaining the permission of the court outside the presence and hearing of the jury.

The motion was granted in part and denied in part and instructions were given pertaining to laboratory testing of the white powder or mescaline, or arrest, indictment and criminal charges concerning such substance *"without first obtaining permission of the court, in open court and outside the presence of the jury."* (Our emphasis.)

In the trial of the cause Springer testified about a conversation concerning marijuana and mescaline and that he was furnished with some of each and the price of each. McCarty's counsel objected "to the continued conversation according to the ruling of the court." There was an off-the-record discussion between counsel and the court, after which the court overruled the objection.

We agree with McCarty that the court has innate power to grant a motion in limine for the purpose of keeping out prejudicial statements or the asking of prejudicial questions. *Burrus* v. *Silhavy* (1973), 155 Ind. App. 558, 293 N.E.2d 794.

The State did not show nor did it attempt to show that the white substance had been analyzed or there was any prosecution pending or to be commenced against McCarty for the same. Thus, the evidence which was admitted and the manner in which it was admitted was in compliance with the order in limine and there was no error in its admission.

Further, the evidence of a further and separate crime, that McCarty possessed and sold to Springer mescaline, would be admissible under the *res gestae* rule as stated in *Kiefer* v. *State* (1960), 241 Ind. 176, 169 N.E.2d 723, cert. den. 366 U.S. 914, 81 S.Ct. 1089, as follows:

". . . Evidence of another and distinct crime is admissible where it was committed as part of the same transaction. . . . The *res gestae* is not confined to the act charged, *but includes acts, statements, occurrences and circumstances which are substantially contemporaneous with the main fact.*" (Our emphasis.)

See also *Thomas* v. *State* (1975), 263 Ind. 198, 328 N.E.2d 212, which cites *Kiefer, supra,* with approval.

## IV.

The defendant next raises an issue in regard to the court's refusal to grant his motion for directed verdict, which raised the matter of the chain of custody in regard to the confiscation and testing of the dangerous drug. However, we have determined that McCarty waived any error in this regard.

At the trial of this cause the State introduced evidence as to the laboratory tests of the marijuana. McCarty objected

on the basis that the State had failed to show a proper chain of custody. At this point the State withdrew the offer of evidence and then proceeded to further establish the chain of custody, after which the State reoffered the evidence. The defendant specifically stated "no objection."

Thus, the chain of custody was established and there was no error in denying the motion for directed verdict and admitting the evidence offered.

## V.

McCarty argues that the conviction of the defendant was contrary to law and not supported by sufficient evidence. It is his contention that the conviction was contrary to law for the reason the trial judge failed to instruct the jury on the issue of entrapment and the State offered no evidence at the trial from which it might be determined that McCarty was not innocently lured and enticed into committing the act of which he was convicted.

McCarty failed to timely tender an instruction to the court on entrapment with the request that it be read to the jury. Inasmuch as the defendant did not object to the trial court's failure to give such an instruction and failed to tender an instruction on the subject, he is precluded from raising this issue on appeal. Ind. Rules of Procedure, Criminal Rule 8(B) ; *Hauk* v. *State* (1974), 160 Ind. App. 390, 312 N.E.2d 92.

A careful reading of the evidence in this cause convinces this court that there was no evidence that McCarty was innocently lured and enticed to commit the crime of sale of marijuana.

From the above record we can only determine that the conviction was not contrary to law.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 338 N.E.2d 738.