Earl WOODSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 185S8.

Supreme Court of Indiana.

Dec. 16, 1986.
Rehearing Denied Feb. 10, 1987.

Richard Vanrheenen, Nile Stanton & Associates, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

A bench trial resulted in a conviction of Possession of a Controlled Substance with Intent to Distribute, a Class A felony. A

second charge, Possession of a Sawed-Off Shotgun, was dismissed at the conclusion of the trial.

The facts are: Armed with a lawful search warrant, Indianapolis Police Officers entered appellant's home at 3:45 a.m., where they found appellant and his wife in bed. From the top of a dresser in the bedroom the officers seized 100 small, tinfoil bindles which were later determined to contain heroin. Also found in the bedroom was marijuana and a sawed-off shotgun. The total weight of the contents of the bindles was 5.3519 grams. Chemical analysis revealed that this mixture contained 1.2 percent heroin. Expert testimony revealed that the current street mixture for heroin sales was about 1 percent pure heroin.

■ Appellant contends there was insufficient evidence to convict him of more than a Class D felony, which is the possession of less than 3 grams of heroin. He argues that since the total mixture contained only 1.2 percent pure heroin and since the police conducted only preliminary tests on some of the separate bindles, it was thus improper for the police to empty the contents of each of the 100 bindles, mix them thoroughly and then test them for total heroin content. We find no merit whatever to this argument submitted by appellant.

A similar issue was raised before this Court in the case of *Lawhorn v. State* (1983), Ind., 452 N.E.2d 915, wherein this Court stated:

"This statute and all those involving controlled substance dealing utilizes (sic) the weight of the entire substance delivered by the dealer. This is the statutory meaning as well as the usage and meaning common in drug trafficking. Appellants and those with whom they dealt treated these transactions as cocaine sales of the aggregate weight of the substance. The Legislature clearly intended to use that same weight in·affixing the penalties herein involved." *Id.* at 917.

The preliminary examination by the police officers in the case at bar revealed that the separate tinfoil bindles were uniform in size and that the contents were uniform in appearance. There was no issue as to what the precise quantity was in an individual bindle. The charge against appellant was having more than 3 grams of the mixture in his possession for the purpose of sale. The method of ascertaining the quantity was entirely proper and results in evidence sufficient to support the charge so far as the quantity in appellant's possession was concerned.

Appellant also contends there was insufficient evidence to prove that he was guilty of intending to deal in the heroin he possessed. Evidence is in dispute on this issue. This Court will not weigh disputed evidence. *Loyd v. State*, (1980) 272 Ind. 404, 398 N.E.2d 1260, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Appellant attempted to convince the trial court he was only a user and not a seller of narcotic drugs. To support this contention, he demonstrated that his arms were scarred from above the elbows to his hands with needle marks and he stated that he had purchased such a large quantity of the drug because he could get it cheaper that way and that even 100 bindles would only last him a few days because of the extent of his habit. He further pointed out that there were no scales or any type of cutting compound with which to measure individual bindle amounts nor was there any packaging material present in his home.

It should be pointed out at this point that the State submitted evidence that there also was no injection equipment present in appellant's home which would indicate that he intended to use the drug himself. The State's testimony further advised the trial court that the manner in which the drugs were packaged was precisely the manner in which they would expect to find them in the possession of a dealer.

■ A trier of fact may draw reasonable inferences from the facts established by either direct or circumstantial evidence in determining the guilt or innocence of a defendant. *McNary v. State* (1984), Ind., 460 N.E.2d 145; *Smith v. State* (1983),

Ind., 455 N.E.2d 346. Intent of a defendant may be inferred from the circumstances presented in the case. *Williams v. State* (1979), 271 Ind. 656, 395 N.E.2d 239.

■ The issue of appellant's intent in the case at bar was placed squarely before the trier of fact, together with appellant's evidence attempting to contradict any such inference. This Court will not reweigh those facts. *Loyd, supra.* We find there is sufficient evidence in this record to support the conclusion of the trial court that appellant intended to deal in a controlled substance.

Appellant claims the trial court erred in refusing to allow him to withdraw his waiver of a jury trial, claiming that his waiver was not knowingly and intelligently made. At the time appellant appeared in court and waived his jury trial, he was represented by Arnold Baratz; however, before the date of his trial, appellant became dissatisfied with the jury waiver situation and contacted Richard Vanrheenen, who was associated with Nile Stanton, to represent him and to attempt to obtain a jury trial. Baratz subsequently withdrew from the case and Vanreenen represented appellant from that time on, including this appeal.

■ It is now appellant's position that Baratz did not fully advise him of the gravity of the situation and the advisability of having a jury decide the issue rather than a trial judge. There is no question that a right to a jury trial is fundamental to the American scheme of justice. *Duncan v. Louisiana* (1968), 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Any waiver of this right must be made knowingly, intelligently and voluntarily. *Doughty v. State* (1984), Ind., 470 N.E.2d 69.

■ In the instant case appellant had signed a written waiver of trial by jury. At a pretrial hearing he was questioned by the court to determine whether he was aware of his right to a jury trial and of what he was relinquishing by waiving the right. Based upon appellant's statements at this hearing, the trial court determined that appellant was making a valid waiver

of trial by jury. Once appellant had effectively waived his right to trial by jury, the withdrawal of the waiver rested within the sound discretion of the trial court. *Perry v. State* (1980), Ind.App., 401 N.E.2d 705.

■ There is nothing in this record to demonstrate that Baratz misled appellant in any way, or is there any demonstration of any change in circumstance which would cause a valid reevaluation of appellant's waiver. We find the trial court did not abuse its discretion in refusing to allow the withdrawal of the waiver of jury trial.

■ Appellant claims the trial court erred in not taking into consideration the amount of adulterant when convicting him of possession with intent to deal in an amount of heroin greater than 3 grams. He claims "the statutory scheme is unconstitutional as applied to the facts in this case". He claims that to interpret the statute to allow the weighing of the adulterant with the pure heroin is a violation of art. 1, § 12 of the Indiana Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. However, as we have previously stated in this opinion, this Court has decided this question previously against appellant's contentions. *See Lawhorn, supra.*

Appellant acknowledges the existence of *Lawhorn* but claims it is distinguishable in that in *Lawhorn* the defendants were actually dealing in cocaine, whereas in the case at bar appellant is only accused of "possession with intent to deal". We fail to see a valid distinction. Whether the defendant is actually in the street selling the diluted drug, or whether he is at home in bed with the diluted drug on his dresser ready for delivery the next morning, is hardly a difference as we perceive it. We therefore adhere to the law previously set out in *Lawhorn.*

The trial court is affirmed.

All Justices concur.