William Edward RILEY, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 45S00–9608–CR–538.

Supreme Court of Indiana.

May 11, 1999.

Stephen Bower, Cohen & Thiros, Merrill-ville, Indiana, for Appellant.

Pamela Carter, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, for Appellee.

DICKSON, J.

The defendant, William Edward Riley, was convicted of two counts of dealing in cocaine, both as class A felonies;[1] dealing in a substance represented to be a controlled substance, a class D felony;[2] and possession of a narcotic drug, a class D felony;[3] and he was found to be a habitual offender.[4] The trial court sentenced the defendant to an enhanced sentence of sixty years. This Court has jurisdiction pursuant to Indiana Appellate Rule 4(A)(7).

The defendant claims six errors: (1) the trial court's limitation on the cross-examination of a confidential informant; (2) the trial court's improper answer to a question from the jury during deliberations; (3) insufficient evidence that the defendant possessed more than three grams of cocaine; (4) insufficient evidence to disprove the defendant's entrapment defense; (5) insufficient evidence that the defendant dealt in a substance represent-

ed to be a controlled substance; and (6) manifestly unreasonable sentence.

### Limitation of Cross–Examination

At trial, the State offered the testimony of Anthony Young, a confidential informant, who worked with the police in arranging the purchase of drugs from the defendant. In return, Young was to receive leniency in his own criminal case on drug charges. The defendant sought to cross-examine Young as to his living arrangements. The State objected on the grounds of relevancy, and the trial court held a conference out of the jury's presence. The defendant contended that his purpose was to determine whether government funds were being used to provide housing and living expenses for Young. Although the cross-examination resumed, a final ruling by the trial court was delayed until all parties had read the relevant case law on the subject. Subsequently, the trial court conducted another hearing out of the jury's presence, found that Young had a reasonable fear for his safety, and denied the defendant's request to inquire as to the witness's street address. The trial court allowed the defendant to inquire as to the type of accommodations in which Young resided, who paid for his residence, and the general location. The defendant did not pursue this information.

The defendant contends that he was presumptively entitled to question a government informant as to the witness's address, citing *Pigg v. State*, 603 N.E.2d 154 (Ind.1992). The defendant also contends that the trial court failed to hold an *in camera* hearing to determine if Young had a reasonable basis for the claimed fear.

When a defendant seeks to cross-examine a confidential informant, he is presumptively entitled to inquire into such matters as the witness's address. *Id.* at 157. This right is not absolute, however, and may be limited if the trial court finds that the witness has a reasonable fear of danger were he to disclose his address. *Id.* Thus, we have required the trial court to conduct an *in*

1. Ind.Code § 35–48–4–1 (1993).

2. Ind.Code § 35–48–4–4.5 (1993).

3. Ind Code § 35–48–4–6 (1993).

4. Ind.Code § 35–50–2–8 (1993).

*camera* hearing during which the defendant may demonstrate the potential resulting prejudice if he is not allowed to pursue the inquiry. *Id.* We review the trial court's decision for an abuse of discretion, and the burden is on the party seeking the information to prove an abuse. *Id.*

■ Despite the defendant's contention that the trial court did not conduct the required hearing, the record clearly discloses that a hearing occurred outside the jury's presence[5] during which evidence and argument were presented and a ruling was made. The defendant has failed to demonstrate how this hearing did not comply with our requirement that an *in camera* hearing be conducted.

■ During the hearing, the State identified evidence that would support a finding that Young had a reasonable fear of danger were he to disclose his address. Young testified at trial that he believed that the defendant would kill him if the defendant knew Young was working with the police. In addition, a receipt for Young's moving expenses was submitted to the trial court, a move at least partially attributed to Young's fear for his own safety. The trial court also acknowledged that both Young and the defendant had been witnesses to murder or close friends of murder victims. Considering these facts, the trial court concluded that a reasonable fear existed. The trial court did not abuse its discretion.

## Jury Question

The defendant contends the trial court erred in answering a specific question from the jury during deliberations. Because the defendant presented an entrapment defense, the jury was instructed as to factors that it might consider in determining whether the defendant was predisposed to commit the charged crime. During deliberations, the jury sent a written question to the trial court

asking, "Do all answers to A through I [in instruction 13], have to be predisposed to commit the crime, ... in determining if the defendant was predisposed to commit the alleged crime or not." Record at 791. The trial court called the parties back into the courtroom, informed them as to the question asked, and, over the defendant's objection, stated that it intended to answer the question "no." *Id.*

■ When jurors request additional guidance from the court, the proper procedure is for the judge to notify the parties so that they may be present before the court communicates with the jury and be informed of the court's proposed response. *Moffatt v. State*, 542 N.E.2d 971, 974 (Ind.1989). When the trial court gives a special instruction on one particular issue, it tends to emphasize that issue as being of primary importance and tends to tell the jury what it ought to do. *Wallace v. State*, 426 N.E.2d 34, 36 (Ind. 1981). When the trial court undertakes to answer questions from the jury regarding the instructions without notice to or outside the presence of the parties, a rebuttable presumption of prejudice arises. *Stanley v. State*, 515 N.E.2d 1117, 1120 (Ind.1987).

The trial court in this case called the parties into the courtroom and informed them of the jury's question and his intended response. Over a timely objection, the court responded to the question with a "no," which was a correct expression of the law set forth in the instruction. On the facts in this case, we do not find it likely that this response would unduly emphasize the particular instruction or influence the jury's action. We find no prejudice in the trial court's response.

The defendant contends that answering the jury's question constituted the giving of additional instruction during deliberations because it explained the meaning of the instruction.[6] In support of this argument, the

---

5. *"In camera"* is defined as follows: "In chambers; in private. A judicial proceeding is said to be heard *in camera* either when the hearing is had before the judge in his private chambers or when all spectators are excluded from the courtroom." *Black's Law Dictionary* 760 (6th ed.1990). Here, the proceeding occurred before the jury was brought into the courtroom, and no

evidence has been presented to suggest that spectators were present.

6. We note that in his reply brief, the defendant additionally argues that the record suggests that the trial court communicated with the jury outside the defendant's presence. Reply Brief at 7. The defendant argues that the trial court's com-

defendant relies upon two cases in which the trial court had given additional instructions to the jury. *Wallace*, 426 N.E.2d at 36–37; *Faceson v. State*, 642 N.E.2d 985, 986–87 (Ind.Ct.App.1994). In *Wallace*, the deliberating jury requested definitions of legal terms used in the instructions, and the trial court provided a written instruction addressing the terms at issue. We held this to be reversible error. *Id.* at 36–37. In *Faceson*, which relied upon *Wallace*, the Court of Appeals held it to be reversible error when the trial court failed to call the parties into open court before responding to the jury's question, giving it written instructions defining the words "dealing," "intent," "delivery," and "possession." 642 N.E.2d at 986–87.

The defendant contends that *Wallace* and *Faceson* require the trial court to reread all of the instructions and that any other response constitutes error. We agree that the generally accepted procedure in answering a jury's question on a matter of law is to reread all instructions in order to avoid emphasizing any particular point and not to qualify, modify, or explain its instructions in any way. *Wallace*, 426 N.E.2d at 36–37. However, we have also held that any error in refusing to answer the jury's question would be harmless. *Averhart v. State*, 470 N.E.2d 666, 690 (Ind.1984), *cert. denied* 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323 (1985). Further, as the State notes, we have also permitted departure from this procedure when a trial court is faced with extreme circumstances, such as including an omitted and necessary instruction or correcting an erroneous instruction, as long as it is "fair to the parties in the sense that it should not reflect the judge's view of factual matters." *Jenkins v. State*, 424 N.E.2d 1002, 1003 (Ind. 1981) (citations omitted). Thus, "when the jury question coincides with an error or legal lacuna [gap] in the final instructions . . . a response other than rereading from the body of final instructions is permissible." *Id.*

Here, the instruction stated, not incorrectly, that the jury had the permissive ability, but not the mandatory duty, to consider the named factors. It is clear from the jury's question that the jury believed it may have had insufficient guidance as to whether all factors had to be proven in order to establish predisposition. In such a case, the trial court's reply of "no", which correctly stated the law and addressed an apparent gap in the instruction, was not error.

## Insufficient Evidence of Amount of Cocaine

The defendant argues that the evidence was insufficient to prove that he dealt cocaine in an amount over three grams, a necessary element to convict him of dealing in cocaine as a class A felony. It is undisputed that the total weight of the packaged material purchased from the defendant on each of the two occasions exceeded three grams. The first set of packages, State's Exhibit W, had a total weight of 10.15 grams. The second set of packages, State's Exhibit X, had a total weight of 6.21 grams. The lab technician who tested the seized material combined the contents of several packages within each group and determined that each sample tested positive for cocaine, but the technician did not determine the relative purity of the cocaine in relation to its overall weight.

The defendant contends that the State failed to establish that the defendant dealt in more than three grams of cocaine because the technician did not establish the relative purity of the sample. Our case law establishes, however, that "[t]he total weight of the delivered drug and not its pure component is to be considered in prosecutions." *Tobias v. State*, 479 N.E.2d 508, 511 (Ind. 1985). We have found that the legislature intended to use the weight of the entire substance as delivered by the defendant, as this encompasses the common understanding of those in the drug trade. *Woodson v. State*, 501 N.E.2d 409, 410 (Ind.1986). The State was not required to prove purity of the product. The evidence of quantity was not.

ments suggest that he responded to the jury before calling the parties into the courtroom and providing notice of his intended answer. While the record may be ambiguous as to the timing, it does not clearly support the defendant's conclusion.

### Insufficient Evidence of Predisposition

■ The defendant claims that the evidence was insufficient to prove that he was predisposed to commit the crime. At trial, the defendant relied on an entrapment defense. The State may rebut this defense either by disproving police inducement or by proving the defendant's predisposition to commit the crime. *McGowan v. State*, 674 N.E.2d 174, 175 (Ind.1996).

■ In reviewing a claim of insufficient evidence, we consider only the evidence that supports the verdict, and we draw all reasonable inferences from that evidence. *Dockery v. State*, 644 N.E.2d 573, 578 (Ind. 1994). We neither reweigh the evidence nor judge the credibility of the witnesses. *Marshall v. State*, 621 N.E.2d 308, 320 (Ind.1993). The conviction will be affirmed if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *McEwen v. State*, 695 N.E.2d 79, 90 (Ind. 1998).

■ The evidence most favorable to the judgment is that the defendant was familiar with drug jargon and prices, that he engaged in multiple transactions, and that he undertook to arrange future transactions. These facts are sufficient to show a predisposition to deal in controlled substances. *See, e.g., Martin v. State*, 537 N.E.2d 491, 495 (Ind. 1989) (familiarity with drug jargon and two sales to undercover officers sufficient to demonstrate predisposition to sell drugs); *Wallace v. State*, 498 N.E.2d 961, 964–65 (Ind. 1986) (familiarity with drug prices and efforts to arrange future transactions among circumstances which support conviction).

### Insufficient Evidence of Dealing in Purported Controlled Substance

The defendant contends that the evidence was insufficient to show that he dealt in a substance represented to be a controlled substance. The evidence favorable to the judgment reveals that an undercover police officer heard the defendant say that he was selling "bogeyman," which the record indicates was the defendant's term for a substance that resembles, but is not, cocaine. The defendant neither told the officer that he was selling him cocaine nor informed him that the "bogeyman" did not contain a controlled substance. Rather, the defendant informed the officer that the substance could be resold as cocaine and that the officer could make nine times the money he paid for it. After being paid two thousand dollars, the defendant provided the officer with a brown paper bag containing three smaller plastic bags filled with a white powdery substance. The defendant argues that the evidence was insufficient because the defendant did not represent it to be cocaine and that the officer who bought it knew that it was not cocaine.

The statute under which the defendant was convicted[7] reads:

(a) A person who knowingly or intentionally delivers or finances the delivery of any substance, other than a controlled substance or a drug for which a prescription is required under federal or state law, that:

(1) is expressly or impliedly represented to be a controlled substance;

(2) is distributed under circumstances that would lead a reasonable person to believe that the substance is a controlled substance; or

(3) by overall dosage unit appearance, including shape, color, size, markings, or lack of markings, taste, consistency, or any other identifying physical characteristic of the substance, would lead a reasonable person to believe that the substance is a controlled substance;

commits dealing in a substance represented to be a controlled substance, a Class D felony.

(b) In determining whether representations have been made, subject to subsection (a)(1), or whether circumstances of distribution exist, subject to subsection (a)(2), the trier of fact may consider, in

---

7. The charging instrument and the jury instructions were not based on sections (a)(2) or (a)(3) but rather described the criminal conduct proscribed by section (a)(1).

addition to other relevant factors, the following:

(1) Statements made by the owner or other person in control of the substance, concerning the substance's nature, use, or effect.

(2) Statements made by any person, to the buyer or recipient of the substance, that the substance may be resold for profit.

(3) Whether the substance is packaged in a manner uniquely used for the illegal distribution of controlled substances.

(4) Whether:

(A) the distribution included an exchange of, or demand for, money or other property as consideration; and

(B) the amount of the consideration was substantially greater than the reasonable retail market value of the substance.

IND.CODE § 35–48–4–4.5 (1993). The State concedes that the defendant never told the officer that the substance was cocaine; however, it argues that the defendant impliedly represented that the substance was a controlled substance when he told the officer that it could be resold at a profit.

In construing a statute, we look to the plain, ordinary, and usual meaning of the language unless the statute itself clearly provides a contrary meaning. *Marion County Sheriff's Merit Bd. v. Peoples Broadcasting Corp.*, 547 N.E.2d 235, 237 (Ind.1989). We also examine the statute as a whole, *Matter of Lawrance*, 579 N.E.2d 32, 38 (Ind. 1991), and we do not presume that the legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result, *State ex rel. Hatcher v. Lake Superior Court, Room Three*, 500 N.E.2d 737, 739 (Ind.1986).

The statute expressly authorizes the trier of fact to consider the circumstances of the sale in determining whether there has been an implied representation that the substance is a controlled substance. IND.CODE § 35–48–4–4.5(b). Here, the defendant delivered two ounces of non-controlled substances, caffeine and ephedrine, for the price of two thousand dollars. The defendant told the officer he could make nine times that amount on re-sale. In addition, the substance, totaling two ounces, was divided and packaged in three separate plastic bags that were placed in a brown paper bag. Finally, in delivering the substance, the defendant placed the bag on the floorboard of the car, rather than directly handing it to the officer.

The criminal activity proscribed by the statute is not limited to circumstances when an offender explicitly and personally represents that the substance delivered is a controlled substance. The actual knowledge of the purchaser is not an element of the charged offense. The determinative element is whether the non-controlled substance was "expressly or impliedly represented to be a controlled substance." IND.CODE § 35–48–4–4.5(a)(1).

In this case, the defendant was engaged in selling a substance that he expressly represented could be sold as cocaine for a profit. IND.CODE § 35–48–4–4.5(b)(2). Further, the defendant packaged the substance in a manner "uniquely used for the illegal distribution of controlled substances." IND.CODE § 35–48–4–4.5(b)(3). Finally, the distribution of this substance included an exchange of money in an amount "substantially greater than the reasonable market value of the substance." IND.CODE § 35–48–4–4.5(b)(4).

On these facts, we find that the evidence is sufficient to support this conviction.

### Manifestly Unreasonable Sentence

The defendant's final contention is that he received a manifestly unreasonable sentence. The trial court sentenced the defendant to the presumptive sentence of thirty years on one count of dealing in cocaine (enhanced to sixty years due to the habitual offender finding) and ordered this sentence to run concurrently with the remaining sentences (thirty years on the other count of dealing in cocaine and three years on each of the remaining counts). Acknowledging that the sentence is within the statutory maximum, but emphasizing that the offense involved elements of entrapment and that he had fallen prey to enticements of a friend, the defendant urges that the sixty year sentence is excessive.

Sentencing is normally left to the sound discretion of the trial court, *Elmore v. State,* 657 N.E.2d 1216, 1219 (Ind.1995), and, although this Court is empowered to review and revise criminal sentences, we will not do so unless the sentence is " 'manifestly unreasonable in light of the nature of the offense and the character of the offender.' " *Prowell v. State,* 687 N.E.2d 563, 568 (Ind.1997) (quoting Ind.Appellate Rule 17(B)), *cert. denied* —— U.S. ——, 119 S.Ct. 104, 142 L.Ed.2d 83 (1998). Additionally, " 'the issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so.' " *Thacker v. State,* 709 N.E.2d 3, 10 (Ind.1999) (quoting *Brown v. State,* 698 N.E.2d 779, 784 (Ind. 1998)); *Prowell,* 687 N.E.2d at 568.

The defendant argues that the nature of the offense does not warrant the presumptive sentence because he was entrapped, relying upon his arguments on the sufficiency of the evidence. As noted *supra,* the jury's rejection of the entrapment defense is supported by the evidence. Entrapment thus cannot be considered in our determination of manifest unreasonableness. Citing *Gregory v. State,* 644 N.E.2d 543 (Ind.1994), the defendant implies that consecutive sentences resulting from a series of offenses by the same defendant stemming from a state-sponsored "sting" operation are manifestly unreasonable and, thus, we should find this sentence to be manifestly unreasonable. But here, the defendant was not sentenced to consecutive terms for a series of offenses. Instead, he received a thirty-year sentence, with a thirty-year habitual offender enhancement; his other sentences run concurrently. "[T]he habitual offender finding is not a separate punishment, but rather an enhancement of the underlying conviction which allows for a longer term of imprisonment because the previous contacts with the justice system have failed to provide any meaningful deterrence to the defendant." *Mayo v. State,* 681 N.E.2d 689, 694 (Ind.1997).

We are not convinced that the sentence in this case is clearly, plainly, and obviously unreasonable and thus decline to revise the sentence.

## Conclusion

The judgment of the trial court is affirmed.

SELBY and BOEHM, JJ., concur.

SULLIVAN, J., concurs and dissents with separate opinion in which SHEPARD, C.J., concurs.

SULLIVAN, Justice, concurring and dissenting.

I concur in the majority's opinion except for its resolution of the claim discussed under the caption, "Insufficient Evidence of Dealing in Purported Controlled Substance."

The defendant stands convicted of Dealing in a Substance Represented to Be a Controlled Substance. Ind.Code § 35–48–4–4.5(a)(1) (1993). To secure a conviction on this charge, the State was required to prove beyond a reasonable doubt that the defendant knowingly or intentionally delivered or financed the delivery of a substance that, while not a controlled substance or prescription drug, was *"expressly or impliedly represented to be a controlled substance." Id.* (emphasis supplied).

As the majority acknowledges, the defendant did not tell the undercover police officer that he was selling cocaine but "bogeyman," a substance that resembles but is not cocaine. The defendant did not represent the substance to be a controlled substance. Rather, the defendant expressly represented that the substance was "bogeyman," which is not a controlled substance. The evidence does not support conviction on this charge.

SHEPARD, C.J., concurs.