## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2020, 12:34 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Abshire
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jake Presley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 31, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2288<br><br>Appeal from the Putnam Circuit Court<br><br>The Honorable Matthew L. Headley, Judge<br><br>Trial Court Cause No.<br>67C01-1809-F4-207 |

**Najam, Judge.**

# Statement of the Case

Jake Presley appeals his conviction for conspiracy to commit dealing in a controlled substance, as a Level 5 felony, following a jury trial. Presley presents one issue for our review, namely, whether the State presented sufficient evidence to support this conviction.

We affirm.

# Facts and Procedural History

Jake Presley and Brian Garrard met while the two were inmates at the Putnamville Correctional Facility. At one point in 2017, Presley "convinced" Garrard to participate in a "plan" in which Presley's mother would take drugs to Garrard's mother, Deborah Morgan, who would then take the drugs to Lieber State Park. Tr. at 126. Once the drugs were in place, an inmate on the offender "work crew" at the park would pick the drugs up. *Id*. at 130.

In April 2018, Robert Evans, an investigator with the Putnamville Correctional Facility's Office of Investigations and Intelligence received a report that Presley was involved in "some illegal activity." *Id*. at 71. Based on that tip, Officer Evans began reviewing all of Presley's phone calls. Officer Evans discovered a phone call from April 26 during which Presley requested the address and information of a female. Presley indicated that "he was going to send some individuals to her house to collect . . . Suboxone[.]" *Id*. at 75. Officer Evans also learned that Morgan would pick up the Suboxone from Lieber State Park on April 28.

[5]     On April 28, Officer Evans and another officer went to the park to conduct surveillance. By 11:00 a.m., Morgan had not yet arrived, so the other officer called her. Based on the officer's conversation with Morgan, Officer Evans was able to locate a package taped behind an ice machine in the park. The package contained thirty-eight "pieces of strips" with the "description 'N8'" on them. *Id*. at 114.

[6]     Thereafter, Brandy Cline, a forensic scientist with the Indiana State Police Laboratory analyzed one of the strips. She concluded that the strip weighed 0.04 gram and that it contained buprenorphine and naloxone. Cline then "did a visual examination" of the remaining thirty-seven strips, which were "consistent" with the one she had analyzed. *Id*. at 123. Cline then "compared the markings" on the strip to a reference, which "indicate[d]" that the strips contained both buprenorphine and naloxone. *Id*. The remaining thirty-seven strips had a net weight of 1.73 grams.

[7]     The State charged Presley with one count of conspiracy to commit dealing in a controlled substance, "to wit: Suboxone, pure or adulterated," as a Level 5 felony, and one count of conspiracy to commit trafficking with an inmate outside a facility, as a Level 6 felony. Appellant's App. Vol. II at 34. The trial court held a jury trial on July 31, 2019. During the trial, Cline testified that the strips found by Officer Evans contained both buprenorphine, which is a controlled substance, and naloxone, which is not a controlled substance. Cline also testified that buprenorphine is "commonly referred to" as Suboxone. *Id*. at 123. At the conclusion of the trial, the jury found Presley guilty of both counts.

The trial court entered judgment of conviction accordingly and sentenced Presley to an aggregate sentence of three years in the Department of Correction. This appeal ensued.

## Discussion and Decision

[8] Presley contends that the State failed to present sufficient evidence to support his conviction for conspiracy to commit dealing in a controlled substance, as a Level 5 felony.[1] Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh the evidence. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*.

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017).

[9] On appeal, Presley first asserts that the State failed to present evidence that he conspired to deal in a controlled substance. In the alternative, Presley contends that the State failed to present sufficient evidence to demonstrate that the

---

[1] Presley does not challenge his conviction for conspiracy to commit trafficking with an inmate outside a facility, as a Level 6 felony.

controlled substance weighed at least one gram. We address each argument in turn.

### *Dealing in a Controlled Substance*

[10] Presley first asserts that the State failed to demonstrate that he conspired to deal in a controlled substance. Specifically, Presley asserts that the State alleged that he conspired to deal in "Suboxone, pure or adulterated," but that Cline only testified that the strips contained buprenorphine and naloxone. Appellant's Br. at 11. Presley maintains that Cline did not "confirm or testify in any way that she believed or understood that the strips were Suboxone" and, thus, that the State failed to prove that he dealt in Suboxone as charged. *Id*. at 12. However, contrary to Presley's argument, Cline testified that buprenorphine is "commonly referred to as [S]uboxone." Tr. at 123. Because Cline testified that the strips contained buprenorphine and that buprenorphine is commonly referred to as Suboxone, the State presented sufficient evidence to demonstrate the Presley had conspired to commit dealing in Suboxone, and his argument on this issue must fail.

### *Weight of Controlled Substance*

[11] Presley next contends that, even if the State presented sufficient evidence to show that he had conspired to deal in a controlled substance, the State failed to prove that the amount of the controlled substance was at least one gram, which the State was required to show in order to elevate the offense from a Level 6 felony to a Level 5 felony. *See* Ind. Code § 35-48-4-2(c). On this issue, Presley

first contends that the State failed to prove that the delivered drug weighed at least one gram because Cline only tested one strip, which strip only weighed 0.04 gram. And, Presley contends that "the other films in the package could have been fake, which contained no amount of [the] controlled substance." Appellant's Br. at 14.

[12] However, Cline was not required to test all thirty-eight strips. *See Woodford v. State*, 752 N.E.2d 1278, 1283 (Ind. 2001) (holding that the State presented sufficient evidence to support a conviction for dealing in cocaine when the lab technician only tested two of nine rocks of cocaine and the total weight of all nine rocks was above the threshold amount for the elevated offense). Rather, the evidence most favorable to the verdict demonstrates that Cline tested one strip and found that it contained a controlled substance. Further, Cline "did a visual examination" of the remaining thirty-seven strips, which were "consistent" with the one she had analyzed. *Id.* at 123. Cline then "compared the markings" on the strip to a reference, which "indicate[d]" that the strips contained both buprenorphine and naloxone. *Id.* Presley's argument that the other strips might not have contained the controlled substance is merely a request that we reweigh the evidence, which we cannot do.

[13] Still, Presley asserts that, even if all thirty-eight strips contained buprenorphine, the State failed to demonstrate that the weight of the drug was at least one gram. Presley acknowledges that the strips had a total weight of 1.77 grams. However, he asserts that the films contained both a controlled substance and a noncontrolled substance but that Cline could not "describe or define a

comparative ratio of those substances, so it is unknown what percentage of the 1.77 grams was actually buprenorphine." Appellant's Br. at 14. In other words, Presley asserts that the State could not prove that the films contained at least one gram of a controlled substance.

[14] However, it is well-settled that "'[t]he total weight of the delivered drug and not its pure component is to be considered in prosecutions.'" *Woodford*, 752 N.E.2d at 1283 (quoting *Riley v. State*, 711 N.E.2d 489, 493 (Ind. 1999)). Accordingly, the State is not required to demonstrate that the pure portion of buprenorphine in the strips weighed at least one gram. Rather, the State presented evidence that the total weight of the strips was 1.77 grams and that each of the strips contained a controlled substance. Accordingly, the State presented sufficient evidence to demonstrate that the weight of the controlled substance was at least one gram.

[15] In sum, the evidence most favorable to the verdict demonstrates that the strips contained Suboxone, a controlled substance. The evidence also demonstrates that the total weight of the Suboxone was at least one gram. Accordingly, the State presented sufficient evidence to support Presley's conviction for conspiring to deal in a controlled substance, as a Level 5 felony. We therefore affirm his conviction.

[16] Affirmed.

Kirsch, J., and Brown, J., concur.